WENTWORTH, Judge.
These consolidated cases involve appeals from two final orders of the Florida Department of Environmental Regulation (DER). Case AM-199 is an appeal from an order granting appellee Estech General Chemicals Corporation (Estech) various permits concerning the construction of a phosphate mine. Cases AG-90 and AG-316 are appeals from an order denying appellants an additional hearing under § 120.57, Florida Statutes, which was requested while the hearings on the permit applications were in progress. The latter appeals were continued pending the outcome of the hearings, and all have now been consolidated.
Estech’s proposed phosphate mine is located in eastern Manatee County in the watershed of Lake Manatee, a primary source of drinking water for Manatee and Sarasota Counties. Pursuant to DER regulations, Estech filed applications for the following:
a) a dam construction permit
b) a dredge and fill permit
c) a discharge permit
d) a state water quality certification for a federal pollution discharge elimination system permit (NPDES)
On July 3, 1980, DER issued letters of intent to grant the applications for the dam construction permit and the discharge permit. Manatee, Sarasota, and ManaSota-88 (a non-profit, private environmental protection organization) filed timely petitions for a § 120.57(1) formal hearing. DER reversed its position in part and issued a letter of intent to deny the discharge permit. Later, DER issued notices of intent to deny the other applications. Estech filed timely petitions for § 120.57(1) hearings on these notices. All the petitions were ultimately consolidated and transferred to the Department of Administrative Hearings.
The hearing began on June 22,1981. Es-tech presented its case first, and rested on June 30. Manatee began its case on July 1, and on the afternoon of July 2 the hearing recessed for the fourth of July weekend. Before the recess, counsel for Manatee indicated that he was aware of plans between Estech and DER to negotiate a settlement over the holiday weekend. He stated that he therefore would not rest his case until he knew the status of the settlement. Over the weekend, Estech and DER entered into a stipulation in which Estech agreed to modify its plan so as to eliminate discharge into state waters by containing all the waste water on the mine site. In turn, the agreement provided “the Department staff withdraws its opposition to the issuance of said Department construction permits and certifications and supports the issuance of the permits and certifications.”
When the hearing reconvened on July 7, Manatee presented more testimony, and again declined to rest, this time because counsel knew that a settlement had been reached. The stipulation was then offered and accepted into evidence as an “amended pleading” and not as evidence of the truth of the information contained therein.[1] However, appellants felt that the stipulation was tantamount to a notice of intent to issue the discharge permits and requested a de novo hearing on the stipulation. The denial of those petitions resulted in the appeals in AG-90 and AG-316.
*362 The hearing continued, and the recommended order was rendered March 15,1982. The hearing officer found that there would be no discharge and therefore there was no need for the water quality permit or the discharge permits. The secretary of DER adopted the hearing officer’s findings of fact, and found that there was competent substantial evidence, apart from the stipulation, that Estech had sufficient storage capacity to prevent all discharges to surface water. However, the secretary rejected the hearing officer’s conclusion that the discharge permit and water quality certification were unnecessary. Therefore, she ordered the following:
3. Within thirty (30) days after entry of this order the Department shall issue the following permits and certifications, with appropriate conditions:
a. A dam construction permit pursuant to Fla.Admin.Code Rule 17-9;
b. A dredge and fill permit pursuant to Fla.Admin.Code Rule 17-4.28;
c. A discharge permit pursuant to Fla. Admin.Code Rules 17-3 and 17-4, specifying that there will be no discharge to surface waters of the state; and
d. The state certification for the required NPDES permit.
4. Estech shall, prior to beginning operations, apply for and receive a permit for-discharge to groundwater pursuant to Fla.Admin.Code Rules 17-3 and 17-4.
I.
By entering into the settlement agreement, DER staff agreed not to actively contest Estech’s surface water discharge and water quality certification applications. The appellants argue that the settlement was therefore indistinguishable from a notice of proposed agency action. § 120.-52(10)(b). However, when the document was entered into evidence, all parties agreed that it was not binding on the hearing officer or the secretary of DER. It was entered into evidence for the purpose of showing that Estech had decided to change . its plans, and that because of the change of plans, DER staff would not oppose the application. The burden remained on Estech to prove that it was capable of operating the mine in compliance with the plan. Had it failed to meet that burden, the permit could not have been granted. The settlement accordingly did not constitute new proposed agency action entitling appellants to a separate § 120.57 hearing.[2]
The question remains whether the admission of the settlement into evidence violated due process requirements. Appellants argue that it did because the modification was a substantial change in plans without notice and with no opportunity to investigate the feasibility of the proposal. Since the issuance of the permits is conditioned upon Estech’s compliance with the provisions of the settlement, appellees’ arguments that the settlement had no impact on the outcome are unfounded. However, we do find that the no-discharge plan did not constitute such a major or substantial change in the proceedings as to result in a due process violation. See Hopwood v. Department of Environmental Regulation, 402 So.2d 1296 (Fla. 1st DCA 1981).
Section 403.087(1), Florida Statutes, provides:
(1) No stationary installation which will- reasonably be expected to be a source of air or water pollution shall be operated, maintained, constructed, expanded, or modified without an appropriate and currently valid permit issued by the department, unless exempted by department rule. In no event shall a permit for a water pollution source be valid for more than 5 years. However, upon expiration, a new permit may be issued by the department in accordance with this act and *363 the rules and regulations of this department.[3]
Obviously, a phosphate mine may reasonably be expected to be a source of water pollution, and a discharge permit is one “appropriate” permit which must be obtained. DER, being charged with protecting the state’s water quality, must be reasonably assured that the potential source of pollution will not violate established water quality standards.[4] Whether the standards will be violated depends on the quality of the existing water, the quality of the water to be discharged, and the volume of the discharged water. By its original application, Estech sought to discharge a certain amount of water into the state waters, and attempted, during its case in chief, to prove that it could do so without violating water quality standards. From the beginning, the plan was to maintain those standards by controlling the volume of water discharged, rather than by controlling the quality of the discharged water. Thus, all parties had notice that the question of the mine’s on-site storage capacity was a determinative issue in the hearing.
That the no-discharge plan did not come as a surprise to appellants is further demonstrated by the testimony of Estech’s key expert witness, Dr. Garlanger. During Es-tech’s case in chief, Dr. Garlanger had testified on direct examination about the advantages of the controlled discharge plan, and had indicated that a no-diseharge plan was not feasible. However, on cross examination he reluctantly admitted that it would be possible to store the water and avoid having any discharge. In addition to Dr. Garlanger’s testimony, there are documents in evidence, which were provided to appellants during discovery, which indicate that the possibility of a no-discharge plan was, or should have been, contemplated by the parties prior to the introduction of the settlement agreement into evidence.
For the foregoing reasons we find that the initial application for a discharge permit encompassed the possibility of a zero discharge condition in the issuance of the permit. We conclude, therefore, that the stipulation did not constitute a major or substantial change in the proceedings in violation of appellants’ due process rights.[5] Because there is competent substantial evidence, apart from the contents of the agreement, that the mine will be capable of operating without discharging into the surface waters of the state, we affirm that part of the order granting the conditional discharge permit and the NPDES certification.
We next consider paragraph four of the decretal portion of the order. Appellants and Estech correctly construe the language of the order as permitting Estech to begin construction of the mine prior to obtaining a groundwater discharge permit. Estech argues that the order is within the department’s discretion and that Estech should be permitted to spend millions of dollars on construction while “taking its chances” that it will receive the groundwater permit necessary to begin operations. However, § 403.087(1)[6] is clear on its face in prohibiting the construction of a probable source of pollution without an appropriate permit. Obviously, under the no-discharge plan, the mine will reasonably be expected to pollute groundwaters of the state, and acquisition of a groundwater discharge permit is therefore a prerequisite to commencement of construction of the facilities.
*364 For the foregoing reasons, we reverse that part of the order which purports to permit construction of the mine prior to the issuance of the appropriate permit. We have considered the remaining points on appeal and find them to be without merit.
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
BOOTH and THOMPSON, JJ., concur.

. The settlement was offered and accepted as a modified plan, all parties agreeing that it was not competent evidence tending to prove that Estech was capable of storing all of its waste water on site.

. The agency action in entering into the settlement was a decision by the Department staff to abandon opposition to the discharge permit application. Since parties in a suit involving environmental regulations do not have a substantial interest in DER’s affirmative action or support for their position, in opposition to other parties, the § 120.57 petitions were properly denied. Cf., McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).

. See also Fla.R.Admin.P. 17-4.03.

. See generally, § 403.021; Fla.R.Admin.P. 17-3.

. If the facts of the case were inverted so that the stipulation attempted to modify a no-discharge plan into a controlled discharge plan, due process issues would assume a different character. See Hopwood, supra.

. 403.087 Permits; general issuance; denial; revocation; prohibition; penalty.—
(1) No stationary installation which will reasonably be expected to be a source of air or water pollution shall be operated, maintained, constructed, expanded, or modified without an appropriate and currently valid permit issued by the department, unless exempted by department rule, (e.s.)